*In re* ERNST KERN COMPANY.

APPEAL OF PREFERRED STOCKHOLDERS'
PROTECTIVE COMMITTEE.

1. APPEAL AND ERROR—MOTION TO DISMISS—BRIEFS—COURT RULES.
   Appellees' motion to dismiss appeals because appellants' brief
   and appendix did not comply with court rule in failing to sub-
   mit a clear and concise chronological statement of facts with
   specific page references to the appendix in support thereof,
   needlessly making the review of the case time consuming, came
   too late, where motion was made in appellees' briefs (Court
   Rule No 67 [1945]).

2. CORPORATIONS—VOLUNTARY DISSOLUTION—PREFERRED STOCKHOLD-
   ERS—CHATTEL MORTGAGES—BANKRUPTCY—REORGANIZATION.
   Trial court's findings in voluntary corporate dissolution proceed-
   ings whereby he gave preference over claims of preferred stock-
   holders to claims of 2 creditors whose claims were secured by
   chattel mortgage covering all of the corporation's personal
   property and an assignment of its accounts receivable and new
   obligations of creditor which had subordinated its claims to
   other creditors in previous bankruptcy reorganization proceed-
   ings *held*, not error under record presented, notwithstanding
   allegations of self-dealing, overreaching and other conduct
   amounting to breaches of fiduciary duties and fraud.

Appeal from Wayne; Fitzgerald (Neal), J.  Sub-
mitted October 6, 1961.  (Docket Nos. 35, 36, Calen-
dar Nos. 48,964, 48,965.)  Decided March 15, 1962.

In the matter of the dissolution of the Ernst Kern
Company, a Michigan corporation, by voluntary dis-
solution proceedings.  Petition by Kern Purchasing

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 744.
[2] 13 Am Jur, Corporations § 1377.
   Priority between creditor and preferred stockholders.  29 ALR 254.

·Corporation, a Michigan corporation, for reclamation under chattel mortgage securing moneys advanced on reorganization plan which terminated prior bankruptcy proceedings. Objections filed by Irving Levick, Mildred Levick, and Seneca Warehouse and Industrial Center, Inc., a New York corporation, and by Benjamin Goldstein, holders of certain obligations springing from reorganization plan. ·Objections filed by Preferred Stockholders' Protective Committee (Ernst F. Kern and Walter E. Pear), asserting neither of above claims entitled to preference. Objections of Preferred Stockholders' Protective Committee denied. Order entered granting priority of Kern Purchasing Corporation and of ·certain obligations held by Irving Levick and others ·springing from reorganization plan. Preferred .Stockholders' Protective Committee appeals. Order ·entered for partial distribution to Kern Purchasing ·Corporation. Preferred Stockholders' Protective ·Committee appeals. Appeals consolidated. Affirmed.

*Walter E. Pear (Allison L. Scafuri,* of counsel), for appellant objector Preferred Stockholders' Protective Committee.

*Dickinson, Wright, McKean & Cudlip (Richard C. Van Dusen,* of counsel), for appellees Kern Purchasing Corporation and Leon Schottenstein, individually and as agent for a group of investors.

*Honigman, Miller, Schwartz & Cohn (Maurice S. Binkow,* of counsel), for appellees Irving Levick, Mildred Levick and Seneca Warehouse and Industrial Center, Inc.

*Miller, Canfield, Paddock & Stone (Emmett E. Eagan* and *John W. Gelder,* of counsel), for appellee ·Goldstein.

Souris, J.    In 1959, the Ernst Kern Company, operator of a Detroit department store, was in the hands of a receiver appointed by the United States district court in bankruptcy.    Pursuant to the provisions of chapter 11 of the Federal bankruptcy act, 11 USCA, § 701 *et seq.,* a plan of arrangement was sought to be effected whereby Kern's unsecured creditors would be paid 15¢ on each dollar of their claims in full satisfaction thereof.    The cash to consummate the creditors' payment and credit for continuation of Kern's operations was provided by Kern Purchasing Corporation, a corporation organized for that purpose by a group of individuals not previously connected with Kern.    Purchasing advanced $570,000 and received in exchange Kern's promissory note and, to secure repayment of that advance and future advances not to exceed $3,000,-000, a chattel mortgage covering all of Kern's personal property and an assignment of its accounts receivable.

Notwithstanding the arrangement with the creditors and the new credit provided by Purchasing, the effort to preserve the business was unsuccessful and, in November of 1959, Kern filed a petition for voluntary dissolution[1] in the Wayne county circuit court in chancery.    Subsequently, Purchasing filed a reclamation petition in those proceedings based upon its chattel mortgage.    Other creditors, including those we shall call the Levick group, filed claims.

The Levick group, which had purchased (in 1957) substantially all of the common capital stock of Kern and had resold it in early 1959, filed claims aggregating in excess of $1,000,000 in the bankruptcy court proceedings.    Instead of participating in the plan of arrangement for 15¢ on each dollar of their claims, they took instead "new obligations" which

---

[1] CL 1948, § 640.1 *et seq.* (Stat Ann 1943 Rev § 27.2354 *et seq.*).

were subordinated to all other creditors' claims and provided for payment from profits. Their claims in the chancery court proceedings were based upon the "new obligations" the group held.

All claims except those of Purchasing and the Levick group ultimately were allowed or other disposition made of them. Appellants here are Ernst F. Kern and Walter E. Pear acting as a preferred stockholders' protective committee. In May of 1960, they filed with the chancery court objections to the claims of Purchasing and Levick. The objections were based upon allegations that each group of claimants held working control of Kern through stock ownership or otherwise and that, consequently, their loans or advances to Kern made during such periods of control should not be given priority over preferred stockholders' rights but should, instead, be treated as investments of equity capital on a par with the common stock of the company. Allegations of self-dealing, overreaching and other conduct amounting to breaches of fiduciary duties and fraud were contained in appellants' written objections.

In September of 1960, hearings were conducted by the chancellor thereon resulting in his finding the following facts:

"A. That on August 18, 1959, Purchasing loaned to Kern and Kern, by authority of its board of directors, borrowed from Purchasing, the sum of $573,704.36; that such loan was evidenced by the promissory note of Kern payable to Purchasing, and that to secure the repayment of said indebtedness and any other indebtedness which might thereafter become due from Kern to Purchasing up to the sum of $3,000,000, Kern gave to Purchasing a chattel mortgage covering all of the personal property of Kern, together with an assignment of Kern's accounts receivable; which said chattel mortgage, dated

August 18, 1959, was duly filed and recorded with the Wayne county register of deeds.

"B. That said loan was made to Kern for the purpose of permitting Kern to consummate a plan of arrangement pursuant to chapter 11 of the bankruptcy act with certain of its then creditors, pursuant to which the said creditors were paid, in full satisfaction of their claims against Kern, the sum of 15¢ on each dollar of such claims; and that such plan of arrangement was confirmed by order of the United States district court for the eastern district of Michigan, southern division, on August 18, 1959.

"C. That subsequent to August 18, 1959, Purchasing advanced to Kern, in cash and merchandise, additional sums totaling $1,194,099.55, all of which advances were secured by said chattel mortgage.

"D. That the undisputed testimony was that all merchandise sold to Kern by Purchasing was billed to Kern at Purchasing's net cost.

"E. That after repayments of part of such indebtedness, Kern is now justly indebted to Purchasing in the principal amount of $684,128.46, plus interest to September 7, 1960, in the amount of $39,668.49, a total of $723,797.95; all of which indebtedness has been and is now secured by said chattel mortgage and assignment of accounts receivable, dated August 18, 1959, held by Purchasing.

"F. That prior to August 18, 1959, Kern was indebted to the Levick group in the approximate amount of $1,000,000, which indebtedness was then due and payable, and which indebtedness was asserted by the Levick group as a claim in said chapter 11 bankruptcy proceedings.

"G. That as a part of the plan of arrangement with creditors of Kern, confirmed by order of the United States district court on August 18, 1959, and for valuable consideration (including forbearance to participate in the distribution to creditors under such plan of arrangement and including the surrender and cancellation of the instruments upon which the claims of the Levick group in said pro-

ceeding were based), there were issued to the Levick group by Kern instruments identified as new obligations Nos. 1, 2 and 3, providing for the payment to the Levick group or their assignees of the total principal sum of $980,407.48 on terms and conditions therein set forth.

"H. That subsequent to the issuance of said new obligations Nos. 1, 2 and 3, such new obligations were assigned in part by the holders thereof and are now held as follows:

| | |
|---|---|
| Leon Schottenstein, individually and as agent for a group of investors | $ 588,244.49 |
| Mildred Levick ......... | 120,000.00 |
| Irving Levick .......... | 120,000.00 |
| Seneca Warehouse and Industrial Center, Inc. | 102,162.99 |
| Benjamin Goldstein ..... | 50,000.00 |

"I. That new obligations Nos. 1, 2 and 3 are valid obligations of Kern and are now due and payable.

"J. That on August 18, 1959 and at the present time, the amounts owed by Kern to its creditors exceeded and now exceed the total value of the assets of Kern, and the preferred stock of Kern therefore had no value on the books of the company on August 18, 1959 and has none now."

The chancellor, on September 30, 1960, entered an order allowing the claims of Purchasing and of the Levick group and on October 5th following, he entered a further order for partial distribution to Purchasing of $500,000. From these 2 orders separate appeals were taken.

Only 2 issues are raised on appeal. First, appellants claim that the chancellor should have compelled the claimants "to establish the good faith and fairness of their dealings" with Kern by direct testimony of the individuals who were the principals in Purchasing and in the Levick group and who also were officers and directors of Kern, appellants having charged them with self-dealing. Second, appellants

claim that the chancellor erred in refusing to compel such individuals to appear for cross-examination when demand therefor was made by appellants on the first day of hearings. Appellants excuse their failure to subpoena such individuals or to take their testimony by deposition in advance of hearing on the grounds that all were nonresidents of the State not subject to subpoena and that assurance had been given 9 months earlier[2] in open court by one of the attorneys for Purchasing that the individuals involved would be produced when required.

We have studied carefully the briefs and the appendices filed by the parties, notwithstanding the vigorous protestations by appellees that appellants' brief and appendix grossly violate Court Rule No 67 (1945).[3] That appellants have failed to comply with our rule, particularly in their failure to submit a clear and concise chronological statement of facts with specific page references to the appendix in support thereof, cannot be disputed. Their failures have made our review of this case exasperatingly, and needlessly, time consuming. In their briefs appellees belatedly move to dismiss these appeals for appellants' disregard of our rules, but such motion now comes too late for effective redress of appellants' deficiencies. The time of this Court has been spent; the work has been done. Dismissal now would serve no useful purpose.

The evidence produced below in support of appellees' claims was more than adequate to support the chancellor's findings and rulings. We know of no rule, and none has been suggested to us by appellants, that requires such claims to be proved only

[2] This assurance was given to objectors other than appellants (who have since withdrawn their objections) during a hearing on Purchasing's reclamation petition several months before appellants appeared in this proceeding by filing their objections to the allowance of claims.

[3] See amendments in 347 Mich xxii and 355 Mich xiv.—Reporter.

by the direct testimony of all individuals involved in the transactions from which the claims arose. Nor do we agree that the record supports appellants' claim that there was a stipulation or agreement to produce certain witnesses upon which appellants were entitled to rely. In short, we have studied the record of the proceedings below to the extent it is included in the appendices and we have considered the arguments contained in appellants' briefs, but we have not been persuaded the chancellor erred.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, and KAVANAGH, JJ., concurred.

OTIS M. SMITH and ADAMS, JJ., took no part in the decision of this case.